IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JULIO GALVEZ, M48906, | ) |
| *Petitioner*, | ) |
| v. | ) No. 18 C 4758 |
| CRAIG FOSTER, Warden, Graham Correctional Center, | ) Judge Virginia M. Kendall |
| *Respondent*. | ) |

## MEMORANDUM OPINION AND ORDER

Julio Galvez is a state prisoner currently serving two concurrent sentences of ten years each: one for aggravated battery of a child under thirteen and another for possession of cocaine and cannabis with intent to deliver. *See People v. Galvez*, 2018 IL App (1st) 152941, ¶ 3. Galvez petitioned the Court for a writ of habeas corpus under 28 U.S.C. § 2254 claiming: (1) he did not receive the process he was due because nobody explained the elements and nature of the charges that the court dismissed as a result of his guilty plea; and (2) counsel ineffectively assisted Galvez when counsel failed to discuss the various charges and legal theories that the court dismissed on account of the plea. Because Galvez procedurally defaulted both of his claims, the Court denies his petition (Dkt. 1).

### BACKGROUND

In May 2014, the people of the State of Illinois charged Galvez with four counts of aggravated battery of a child, four counts of aggravated domestic battery, and ten

counts of aggravated battery. *See People v. Galvez*, 2018 IL App (1st) 152941, ¶ 3. In another case, the State charged Galvez with two counts of possession of cocaine with intent to deliver and possession of cannabis with intent to deliver. *Id*.

**Rule 402 Conference**

Galvez, accompanied by a Spanish interpreter and counsel, appeared before the court on November 13, 2014. *Id.* ¶ 4. Defense counsel requested the court hold a Rule 402 conference (an informal plea discussion with the judge) for both cases. *Id.* The court asked Galvez, through the interpreter, if he wished to proceed with the conference, and Galvez responded "yes." *Id.* The court described how the conference would work and Galvez stated that he understood. *Id.*

Prior to beginning the conference, the State proffered the factual basis for both cases. *Id.* ¶¶ 5–6. In the narcotics case, the State explained how, in executing a search warrant of Galvez's residence, the Chicago Police Department recovered 7,347 grams of cannabis, 16.6 grams of cocaine, a roll of cellophane used for narcotics packaging, a scale used to measure narcotics, and $2,181. *Id.* ¶ 5.

Additionally, the State presented the factual basis for the aggravated battery case, which focused on the suspected abuse of Galvez's three-year-old daughter. *Id.* ¶ 6. On October 14, 2013, the child's grandmother was watching her. *Id.* Upon changing the victim's diaper, the grandmother discovered various injuries to her back and butt, as well as the swelling and bruising of her face. *Id.* The grandmother took the child to the hospital where medical staff determined that her injuries included burns, whip marks, and bruising throughout her body. *Id.* The grandmother called

Almaraz—the child's mother and a named defendant in the original complaint—who declared: "I have nothing to do with it. It was him." *Id.* Additionally, the grandmother heard Galvez in the background saying: "They are my kids. I can do with them what I want." *Id.* The State showed the judge photos of the injuries and explained that physicians would testify that the injuries were not consistent with a single incident; rather, they were the result of abuse. *Id.*

Following the off-the-record 402 conference, defense counsel indicated that Galvez elected to decline the court's offer and accept the one made by the State. *Id.* ¶ 7. The State's offer was two concurrent sentences: ten years in prison for possession of controlled substance with intent to deliver to be served at 50%; and ten years in prison for aggravated battery to a child to be served at 85%. *Id.* The court unequivocally asked Galvez if he wanted to reject the court's offer and accept the State's offer: Galvez answered "yes." *Id.* ¶ 8.

**Plea Colloquy**

The court explained the consequences of the plea deal regarding immigration, highlighting how the felony convictions could become the basis for deportation. *Id.* The court admonished Galvez as to the nature of the charges he was pleading to as well as the range of penalties for each of them. *Id.* When asked if he understood the nature of the charges, Galvez said "yes." *Id.* When asked if he still intended to plead guilty given what the court had just explained, Galvez answered "yes." *Id.* ¶ 10.

The court inquired as to whether Galvez knew what a jury trial was, and Galvez responded "no." *Id.* Defense counsel stated that he spoke Spanish and that he

explained the procedures of a jury trial to Galvez in Spanish prior to the hearing. *Id.* Out of an abundance of caution, the court illustrated the constitutional right to a jury trial and asked Galvez whether he understood: Galvez replied "yes." *Id.* When asked whether he was waiving his right to a jury trial, Galvez responded "yes." *Id.* The court accepted this waiver of Galvez's constitutional right to a jury trial. *Id.*

The court went on to discuss Galvez's right to a presentence investigative report (PSI) and Galvez stated that he chose to waive this right. *Id.* In accepting the waiver, the court explained how the additional written waiver was evidence of defense counsel's advisement of his client as to the PSI right. *Id.* The court asked defense counsel whether the conversation involving Galvez's PSI right was in Spanish, to which he responded "yes." *Id.*

The court continued to admonish Galvez of the rights he was waiving by pleading guilty, including his right to confront witnesses and put on any defense. *Id.* at 11. The court asked Galvez whether he understood the rights he was giving up, and Galvez responded "yes." *Id.* The court asked Galvez whether he was voluntarily pleading guilty, and Galvez replied, "yes." *Id.* The court asked Galvez whether anyone forced him to accept the State's offer and whether the State promised anything other than to recommend the offer to the court. *Id.* Galvez responded "no" to each query. *Id.*

Following the parties' stipulation that the court heard the factual bases to support a plea of guilty during the Rule 402 conference, the court found that factual bases did exist and that Galvez's plea was voluntary. *Id.* at 12. The court sentenced Galvez

to 10 years in prison for aggravated battery of a child and possession of a controlled substance with intent to deliver. *Id.* ¶ 12–13.

**Postconviction Relief**

On April 7, 2015, Galvez filed a postconviction petition pro se, alleging that his guilty plea was involuntary because he did not speak English, his Spanish interpreter spoke too fast, and Galvez did not understand his right to a jury trial. *Id.* ¶ 14. Galvez asserted that, had he known of the consequences of his plea, he would not have entered into it. *Id.*

The trial court summarily dismissed the postconviction petition on May 1, 2015, concluding that Galvez's claims were frivolous and patently without merit. *Id.* ¶ 15. The court emphasized that Galvez never asserted that he did not understand his interpreter during the Rule 402 conference or during the proceedings, reasoning that: "For [Galvez] to remain silent to the issue when entering a guilty plea, then to now assert a claim of inadequate translation would be an open invitation to due process exploitation." *Id.*

Galvez appealed the trial court's decision to the Illinois Appellate Court. *Id.* In his appeal, Galvez contended that the trial court erred in summarily dismissing the postconviction petition because it raised an arguable due process violation. *Id.* ¶ 16. Galvez stated that the record did not affirmatively rebut his claim that he did not understand the Spanish translator and that he entered into the plea unknowingly. *Id.*

On January 30, 2018, the Illinois Appellate Court affirmed the lower court's ruling and found that the record did in fact establish that Galvez entered the plea voluntarily and knowingly. *Id.* ¶ 26. The court stated that:

> Throughout the trial court's admonishments, made through a Spanish interpreter and in the presence of defendant's counsel who spoke Spanish, defendant repeatedly acknowledged he understood the rights he was giving up by pleading guilty and the charges and sentencing ranges for the offenses. Defendant acknowledged he wanted to plead guilty and his plea was voluntary.

*Id.* ¶ 25. The appellate court emphasized that Galvez did not allege that the trial court improperly admonished him under Rule 402; instead, Galvez only alleged that his plea was unknowing because he did not speak English and did not understand the translator during the proceedings. *Id.* ¶ 21.

Subsequently, on October 4, 2018, Galvez petitioned the Supreme Court of Illinois for leave to appeal ("PLA"). (Dkt. 16-6 at 1.) His petition raised three separate claims: (1) the plea was not knowing and voluntary because Galvez does not speak English and did not understand the court's Spanish translator during plea proceedings; (2) the plea was not knowing and voluntary because Galvez does not speak English and did not understand the court's Spanish translator during the admonishment stage; and (3) appellate counsel ineffectively assisted him. (Dkt. 16-6 at 4–11.)

In relation to his first claim, Galvez argued that the trial court failed to explain the consequences of accepting a guilty plea where there are multiple charges, and that he had attempted to have counsel raise this argument at the appellate level, but to no avail. *Id.* at 5. Additionally, Galvez contended that the court failed to ask whether he fully understood counsel and the interpreter before accepting the plea,

and although the record shows him responding to questions posed by the court, this does not demonstrate that he understood what he was responding to. *Id.* On May 30, 2018, the Supreme Court of Illinois denied Galvez's PLA. (Dkt. 16-7.)

On July 11, 2018, Galvez petitioned this Court for a writ of habeas corpus. (Dkt 1.) Galvez raised two claims: (1) that his plea agreement violated due process because neither counsel nor the Spanish interpreter explained the various theories, consequences, or sentencing ranges of the charges that the court dismissed as a result of the guilty plea; and (2) that defense counsel's failure to explain the various charges and theories before Galvez accepted the plea constituted ineffective assistance of counsel. (Dkt. 1 at 5.)

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court may not grant a state prisoner's habeas petition unless the state court's decision:

> (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This highly deferential standard is overcome only when dealing with "extreme malfunctions in the state criminal justice system." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

The state courts must have one full round of review of a claim before a federal court may review its merits. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). All

claims must be "fairly present[ed]" at every level of state court review, meaning that the petitioner must articulate the constitutional grounds and the factual basis for each claim. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). The exhaustion doctrine requires petitioners to present, at every level of state court review, the "operative facts and legal principles" involved in each claim. *Badelle v. Correll*, 452 F.3d 648, 660 (7th Cir. 2006). If a petitioner raises a claim that was not present at every level of the state judiciary, or alleges different operative facts or legal theories, the petitioner procedurally defaults the claims barring federal review. *Boerckel*, 526 U.S. at 848.

A petitioner may overcome this bar by establishing both a cause for the procedural default and prejudice stemming from it. *Wainwright v. Sykes*, 433 U.S. 72, 86–87 (1977). Generally, cause for default involves the showing of some type of impediment external to the defense that prevented the federal claim from being presented to the state courts. *Murray v. Carrier*, 477 U.S. 478, 488, 492 (1986). The fact that appellate counsel, for instance, failed to recognize the basis of a claim, or knew of the basis but elected not to raise it, is insufficient to establish cause. *Engle v. Isaac*, 456 U.S. 107, 133–34 (1982); *Murray*, 477 U.S. at 493. In addition to cause, a petitioner must show actual prejudice, such as a constitutionally invalid sentence, that directly results from the alleged violation going unaddressed. *Wainwright*, 433 U.S. at 77.

Alternatively, a federal court may review a procedurally defaulted claim where a petitioner can demonstrate that a miscarriage of justice will result from the denial of relief. *Murray*, 477 U.S. at 495–96. To prove that a miscarriage of justice will result from the forgoing of federal review, the petitioner must establish that he is

actually innocent of the offense and that no reasonable juror would have returned a verdict of guilty but for the state's alleged error. *Schlup v. Delo*, 513 U.S. 298, 327–29 (1995).

**ANALYSIS**

Galvez argues that his state court conviction violates the Fourteenth and Sixth Amendments. He contends that the failure of his defense counsel and Spanish interpreter to explain the nature of the charges that the court dismissed under the plea agreement violates the Fourteenth Amendment's Due Process Clause. Furthermore, Galvez asserts a Sixth Amendment ineffective assistance of counsel claim based on counsel's failure to communicate through the Spanish interpreter the various counts, legal theories, and sentencing ranges of his indictment.

**I.      Due Process**

Galvez procedurally defaulted his first claim—that he unknowingly accepted the plea deal after no one informed him of the nature of the dismissed charges—because he failed to exhaust the claim in the state court system. As stated above, federal habeas review only follows "one complete round" of claim presentment to the state courts. *O'Sullivan*, 526 U.S. at 845. In doing so, the petitioner must raise the same federal constitutional claim, under the same facts and legal theories, at each level of state court review. *Baldwin*, 541 U.S. at 32. Failure to do so results in procedural default. *Boerckel*, 526 U.S. at 848.

While Galvez presented the due process claim under the same legal theory and operative facts in his PLA to the Illinois Supreme Court, he failed to include the

claim in both his pro se postconviction petition and his appeal of the trial court's summary dismissal of his petition. (Dkt. 16-6 at 12.) Galvez alleges that his postconviction petition to the state trial court failed to include the claim because "he was reasonably unable to file a complete post-conviction petition assisted by counsel and only submitted the gist of a constitutional violation." (Dkt. 20 at 1.)

To begin, Galvez appears to assert that, while he failed to include the claim in his pro se postconviction petition, the court should excuse this failure because he did not have the assistance of counsel. While courts give pro se petitioners the benefit of the doubt, courts cannot excuse their omissions completely. *Haines v. Kerner*, 404 U.S. 519, 521 (1972). If courts did that, all pro se petitioners could theoretically litigate their way around the exhaustion doctrine. But "pro se litigants are not exempt from exhaustion requirements." *Fabian-Soriano v. Barr*, 925 F.3d 552, 558 (1st Cir. 2019) (applying this rule in the immigration context) (internal citation omitted); *see Allen v. Clements*, 467 F. App'x 784, 786 (10th Cir. 2012). The postconviction petition made no mention that Galvez's plea was involuntary because nobody alerted him to the charges that the court dismissed. Galvez thus procedurally defaulted it.

Additionally, Galvez's PLA asserted that he filed a pro se motion, styled "Appellant Motion to File a Supplemental Brief Pro Se," in the Illinois Appellate Court. (Dkt. 16-6 at 12.) The motion urged the appellate court to allow him to file a pro se brief containing the above claim because his counsel refused to raise it. *Id.* The court denied Galvez's motion, so he never got the opportunity to raise his claim. *Id.*

Although not expressly stated, Galvez appears to argue that his appellate counsel's decision not to raise the claim constitutes cause for his procedural default.

As mentioned above, attorney negligence is insufficient to establish cause for procedural default. *Engle*, 456 U.S. at 133–34. There is a wide range of professional competence in the law and plenty of room for counsel to strategically decide which claims to pursue and which claims to not pursue. It is for the lawyers to choose how to best balance their obligations to their clients and the courts.

If attorney negligence becomes constitutionally ineffective assistance of counsel, however, a habeas petitioner may be able to establish cause for a procedural default. *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980). Under the exhaustion doctrine, the petitioner must have brought the ineffective assistance claim before the state courts as an independent claim before using it to establish cause on federal habeas review. *Murray*, 477 U.S. at 489. This is a requirement regardless of whether the petitioner brings the federal ineffective assistance claim to show cause for procedural default or as an independent ground for habeas relief. *Id.* Here, Galvez did not independently assert an ineffective assistance claim in the state courts, so he cannot use ineffective assistance as the cause for his default. Galvez failed to establish a cause that would excuse his failure to fairly present his claim to the state courts.

Even if appellate counsel's decision to not bring the claim rose to the level of ineffective assistance and thus established cause, it still does not change the fact that Galvez suffered no prejudice because his claim is meritless. In cases involving a plea deal, the record must contain an affirmative showing that the plea was knowing and

voluntary. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). This requires an affirmative waiver by the accused of their privilege against self-incrimination, right to trial by jury, and right to confront one's accusers. *Id.* at 242. The court must also inform the defendant of the nature of the charge they are pleading to, *McCarthy v. United States*, 394 U.S. 459, 467 (1969), as well as the consequences of the plea, including potential sentencing ranges, *Brady v. United States*, 397 U.S. 742, 755 (1970).

The state court record clearly shows that the court properly admonished Galvez and that he knowingly waived his constitutional rights. Additionally, nothing contained in the record indicates that Galvez did not understand the Spanish interpreter. Galvez argues, however, that his plea was not knowing because nobody informed him of the nature of the dismissed charges. (Dkt. 1 at 5.) Yet there is no Supreme Court precedent holding that a defendant must be informed of the nature and consequences of charges that are dismissed as part of a plea agreement. For that reason, the state courts did not contravene or unreasonably apply clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006). Nor can one imagine what prejudice could arise from the failure to know about charges that have been dismissed against a petitioner and that will not longer be pending. Galvez fails to articulate how his lack of knowledge of these dismissed claims could ever have a prejudicial impact on him.

With respect to all other requirements, the appellate court's decision was consistent with prevailing federal law. The appellate court found that the trial court admonished Galvez about the constitutional rights he was waiving, the charges he

was pleading guilty to, and the sentencing ranges for those crimes. *See People v. Galvez*, 2018 IL App (1st) 152941, ¶ 25. Furthermore, the court determined Galvez voluntarily made the plea because he acknowledged that he understood the court throughout the hearing and never asserted that he could not comprehend his interpreter. *Id.* Therefore, the court reasonably concluded that Galvez knowingly entered into the plea.

## II. Ineffective Assistance of Counsel

Galvez also seeks federal habeas relief for ineffective assistance of counsel because counsel never alerted him to the nature of the charges that the court dismissed following his acceptance of the plea deal. Like the due process claim, Galvez procedurally defaulted his ineffective assistance claim because he failed to exhaust state court remedies. While Galvez did briefly raise this claim in his PLA, he never brought the claim before the Illinois Appellate Court. Consequently, Galvez procedurally defaulted the claim and it is not cognizable on federal habeas review. *Boerckel*, 526 U.S. at 848.

\* \* \*

## CONCLUSION

Galvez procedurally defaulted both his claims because he failed to exhaust state court remedies. Accordingly, the Court denies his petition for a writ of habeas corpus (Dkt. 1). Furthermore, the Court declines to issue a certificate of appealability because Galvez failed to clearly demonstrate the denial of a constitutional right, or that reasonable jurists would disagree with this Court's resolution of Galvez's petition on exhaustion grounds. *See* 28 U.S.C. § 2253(c)(2).

_____
Virginia M. Kendall
United States District Judge

Date: July 19, 2019